**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARCOS HERNANDEZ, | : | |
| | | Civil Action No. 10-4653 (JLL) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| DONALD MEE, et al., | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>
Marcos Hernandez
East Jersey State Prison
Rahway, NJ  07065

Counsel for Respondents
Matthew M. Bingham
Asst. Prosecutor
Cumberland County
Bridgeton, NJ  08302

**LINARES,** District Judge

    Petitioner Marcos Hernandez, a prisoner currently confined at East Jersey State Prison in Rahway, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Donald Mee and the Attorney General of New Jersey.

    For the reasons stated herein, the Petition will be denied.

I.  BACKGROUND

A.  Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> We begin with a summary of the relevant facts. Drug Enforcement Administration (DEA) agent James Kerrigan (Kerrigan) arrested Faustino Fuentes (Fuentes) on certain drug charges and Fuentes agreed to cooperate with the Cumberland County Prosecutor's Office (CCPO) in its investigation of the sale of illegal drugs. Fuentes informed Kerrigan that he could provide information about defendant, who he said was selling large quantities of cocaine in the Cumberland County area.
>
> With the assistance of persons in the CCPO, Fuentes set up a controlled purchase of CDS. On January 14, 2004, Fuentes met with defendant. He was wearing a Kell transmitter, which allowed Kerrigan to record Fuentes' conversations. A detective gave Fuentes $680 to purchase CDS. Fuentes drove to a pre-arranged location in the City of Vineland in his silver pick-up truck.
>
> A red or maroon colored van arrived and parked behind Fuentes' truck. Defendant was driving the van and he had one passenger. Kerrigan and other law enforcement officers maintained surveillance of the scene. Defendant exited the van and Fuentes got out of his truck. They met between the two vehicles and spoke briefly.
>
> Defendant entered the driver's side of the van and Fuentes entered the passenger side. After about five minutes, Fuentes exited the van, went back to his

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

vehicle and left the scene. Defendant also departed. Kerrigan met Fuentes in a parking lot and recovered three bags containing twenty one grams of a substance, later determined to be cocaine. Fuentes was not in possession of any money.

At the trial, Kerrigan played the tape recording of the conversations in the van. Kerrigan identified Fuentes' voice as one of the voices heard on the recording. At one point on the recording, a voice stated "[t]his way doesn't work for you? Because, really, I am giving it to you pure and I am going to give it to you-I am also giving it to you for ten bucks." Kerrigan testified that "pure" is a slang term for cocaine.

On April 14, 2004, Fuentes met defendant for another pre-arranged controlled purchase of CDS. He was again wearing a Kell transmitter. Kerrigan provided Fuentes with $2000 in cash. Fuentes drove to a residence in Vineland. Kerrigan and other law enforcement officers again maintained surveillance of the scene. Fuentes exited his vehicle. Defendant drove up, got out of his car and greeted Fuentes. They went into the garage, where they remained for a few minutes. Fuentes left the garage, got back into his truck and drove away.

Fuentes thereafter met Kerrigan at a parking lot and gave him a package of a substance, which was later determined to be cocaine. The recording of the conversations in the garage was played at the trial. Kerrigan testified that Fuentes' voice was one of the voices heard on the recording. Kerrigan also testified that the other voice on the recording was "very distinctive." Kerrigan said that the same voice had been recorded during the meeting between defendant and Fuentes on January 14, 2004.

The State called Fuentes as a witness but he refused to testify. Outside the presence of the jury, the court discussed the matter with counsel. Fuentes then was called to the stand and the following colloquy between Fuentes and the prosecutor ensued:

> Q. Before we broke and had the jury go out, you had turned to the judge and you had said to him-well, tell us what you said to him.

3

A. Well, I said to him that I spoke to you and to the other prosecutor and to the detective many times that [I'm] not going to testify. And, you know, I was not going to testify. You still subpoenaed me without ... letters to tell my boss that I was going to come to Court. I'm this close to losing my job, and you still subpoenaed me here for four days, don't care that I lose my job or not, knowing that [I'm] not going to testify.

Q. Okay. So, to that end,-and I think you're making it perfectly clear, regardless of what I show you, what I ask you, if I played tapes for you, and tried to ask you questions about any of this material that we have, your answer would be the same, and you refuse to testify about it.

A. Yes, sir.

The court then asked Fuentes to explain his reasons for refusing to testify. Fuentes stated:

... the DEA agent told me that the deal was off, that [they're] not satisfied with my work. Nobody was-he made it seem there was nobody [who] was happy with me. And, he don't [sic] need my help no [sic] more. I believe the last time I was here. I got ten years out of that deal. I went. I came on, and I speak. I got four months left. I'm working, doing what I'm supposed to do. And now, they send me back. So, for me, it was-I want all that behind. I just want to work and do what I'm supposed to do. And, I told him many times that I want this all behind, and the deal was off. They told me the deal was off. And, I still got my ten years. I went to jail. I came back. And, I'm doing what I'm supposed to do. So, I just ask the Court please let me be and ... I'm trying to do good.

State v. Hernandez, 2010 WL 816828, *1-*2 (N.J.Super. App. Div. March 9, 2010).

4

B.   Procedural History

Petitioner was tried before a jury in the Superior Court of New Jersey, Law Division, Cumberland County, which found him guilty of distribution of a controlled dangerous substance (CDS), contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2), and distribution of CDS, contrary to N.J.S.A. 35-5(a)(1) and N.J.S.A. 35-5(a)(1).

In a judgment of conviction entered on November 30, 2007, the trial court sentenced Petitioner to an aggregate fifteen years of incarceration, with a seven-year period of parole ineligibility.  On March 9, 2010, the Superior Court of New Jersey, Appellate Division, affirmed the conviction and sentence. The Supreme Court of New Jersey denied certification on June 21, 2010.  See State v. Hernandez, 202 N.J. 348 (2010).  Thus, Petitioner's conviction became "final" for federal habeas purposes ninety days later, on September 19, 2010.  See 28 U.S.C. § 2244(d).

Among the claims Petitioner asserted on direct appeal were certain claims of ineffective assistance of counsel.  The Appellate Division declined to address those issues on direct appeal.

> Defendant also argues that he was denied the effective assistance of trial counsel because his trial attorney: failed to seek a hearing on the admissibility of the audiotapes pursuant to State v. Driver, 38 N.J. 255, 183 A.2d 655 (1962); did not call him as a witness; failed to object to certain hearsay testimony;

5

stipulated as to the chain of custody of the cocaine in evidence; and failed to cross-examine the person who prepared the lab reports concerning the weight and composition of the drugs seized from Fuentes.

Claims of ineffective assistance of counsel should ordinarily be raised in a petition for post conviction relief (PCR). State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). Indeed, "[o]ur courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." Ibid. We therefore decline to address these issues. Defendant may pursue these claims in a PCR petition.

State v. Hernandez, 2010 WL 816828, *7 (N.J.Super. App.Div. March 9, 2010) (emphasis added).

On September 3, 2010, instead of filing a state petition for post-conviction relief as suggested by the Appellate Division, Petitioner submitted in federal court his Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By Opinion and Order [5, 6] entered April 25, 2011, this Court dismissed the Petition without prejudice, as a "mixed" petition asserting both exhausted and unexhausted claims, including unexhausted claims for ineffective assistance of counsel. In its Opinion, this Court specifically noted that a stay under Rhines v. Weber, 544 U.S. 269 (2005),[2] would not be appropriate both because Petitioner could not establish "good cause" for failing to follow the

---

[2] This Court also cited Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), in which the Court of Appeals held that a stay would be appropriate when an outright dismissal could jeopardize the timeliness of a future federal habeas petition.

suggestion of the Appellate Division and pursue his ineffective-assistance claims in a state petition for post-conviction relief and because Petitioner's one-year federal habeas limitations period would not expire until September 19, 2011, giving Plaintiff ample time to file a state petition for post-conviction relief and return to federal court following exhaustion of his state remedies.[3] In its Order of dismissal, this Court granted Petitioner the option to proceed only with his exhausted claims by moving, within 45 days thereafter, to re-open the matter, attaching to any such motion a statement that he desired to withdraw his unexhausted ineffective-assistance claims and, if he desired to pursue any additional exhausted claims, by attaching to any such motion to re-open a proposed amended petition.

Thereafter, on May 19, 2011, Petitioner submitted here a timely Motion [8] to Eviscerate the Unexhausted Issues, accompanied by an Amended Petition setting forth only his exhausted claims and abandoning his unexhausted claims of ineffective assistance of counsel.

On February 8, 2012, Petitioner filed a Motion [11] to Stay this proceeding pending exhaustion of his unexhausted claims.

---

[3] Here, this Court specifically cited to 28 U.S.C. § 2244(d)(1) and (2), which set forth the federal limitations period and tolling provisions, including tolling during the pendency of a properly-filed state petition for post-conviction relief.

Petitioner did not file a state petition for post-conviction relief until March 9, 2012.

Respondents have answered and this matter is now ready for resolution of the Motion to Stay and of the merits of the Petition.

## II. 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the

8

state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.

Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims

presented to, but unadjudicated by, the state courts, however, a

federal court may exercise pre-AEDPA independent judgment.  See

Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000),

cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL

1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell,

290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and

cases discussed therein).  In such instances, "the federal habeas

court must conduct a de novo review over pure legal questions and

mixed questions of law and fact, as a court would have done prior

to the enactment of AEDPA."  Appel v. Horn, 250 F.3d 203, 210 (3d

Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d

Cir. 1999)).  "However, § 2254(e)(1) still mandates that the

state court's factual determinations are presumed correct unless

rebutted by clear and convincing evidence."  Simmons v. Beard,

581 F.3d q158, 165 (3d Cir. 2009).

The deference required by § 2254(d) applies without regard

to whether the state court cites to Supreme Court or other

federal caselaw, "as long as the reasoning of the state court

does not contradict relevant Supreme Court precedent."  Priester

v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19

(2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.   ANALYSIS

A.   Motion for Stay

This Court first must address Petitioner's Motion [11] to stay this matter pending exhaustion in state court of his unexhausted claims.[4]  Respondents have not opposed the Motion. Nevertheless, the Motion will be denied.

---

[4] As noted above, Petitioner has failed to exhaust his claim of ineffective assistance of trial counsel.

11

The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. Granberry v. Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509, 516-18 (1982). Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review. Rose, 455 U.S. at 519.

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.") Once a petitioner's federal claims have been fairly presented to the

12

state's highest court, the exhaustion requirement is satisfied. Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).

Generally, district courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. Rose v. Lundy, 455 U.S. at 522; Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies").

Moreover, the exhaustion doctrine is a "total" exhaustion rule.  That is, "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]."  Lundy, 455 U.S. at 522.  At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions.  The enactment in 1996 of a one-year

13

limitations period for § 2254 habeas petitions,[5] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'" <u>Crews v. Horn</u>, 360 F.3d 146, 151 (3d Cir. 2004) (quoting <u>Zarvela v. Artuz</u>, 254 F.3d 374, 379 (2d Cir.), <u>cert. denied</u>, 534 U.S. 1015 (2001)). Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court. "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." <u>Crews</u>, 360 F.3d at 151. Indeed, the Court of Appeals for the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." <u>Crews</u>, 360 F.3d at 154.

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in <u>Crews</u>.

> [S]tay and abeyance should be available only in limited circumstances. ... [S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> ...

---

[5] <u>See</u> 28 U.S.C. § 2244(d).

14

> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. ... For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations omitted).

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations. "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back." Id. at 278. See also Crews, 360 F.3d at 154 ("If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court. If a petitioner fails to meet either time-limit, the stay should be vacated nunc pro tunc.") (citations omitted).

Here, Petitioner originally presented a "mixed" petition, which this Court dismissed without prejudice approximately five months before expiration of the federal limitations period,

15

giving Petitioner ample time to properly file a state petition for post-conviction relief tolling the federal limitations period. The factual and legal bases for the claims had already been developed in Petitioner's direct appeal. The Appellate Division had previously advised Petitioner to file a state petition for post-conviction relief. Moreover, before expiration of the federal limitations period, this Court explained to Petitioner, at length, the exhaustion requirement and cited him to the relevant federal statutes regarding the limitations period and the tolling provision. Instead of returning to state court to exhaust his unexhausted claims, Petitioner voluntarily abandoned his unexhausted claims and filed here an Amended Petition asserting only exhausted claims. Petitioner did not file a state petition for post-conviction relief until March 9, 2012, two years after the Appellate Division directed him to initiate such a proceeding, more than ten months after this Court dismissed the initial Petition without prejudice for failure to exhaust state remedies on some claims, more than nine months after he advised this Court he was abandoning those claims, and a month after he filed this Motion for stay.

Petitioner has never suggested that he labored under any confusion about the proper time and place to assert his unexhausted claims, nor could he, credibly, in light of the opinions of both the Appellate Division and this Court. Nor has

16

he offered any explanation for his lengthy delay in filing a state petition for post-conviction relief.  To the contrary, he asserts only that Respondents will not be prejudiced by a stay. Prejudice to Respondents, however, is not the test by which an application for stay is to be determined.  Rhines requires this Court to determine whether there is "good cause" for the delay, whether the claims are potentially meritorious, and whether Petitioner has engaged in deliberately dilatory litigation tactics.  In light of Petitioner's litigation history set forth above, this Court finds that Petitioner cannot demonstrate good cause for failing to exhaust his state remedies before bringing this Amended Petition to federal court and that Petitioner has, to the contrary, deliberately engaged in delay.[6]  The Motion for stay will be denied.

B.   Right of Confrontation

Petitioner asserts that he was deprived of his Sixth Amendment right of confrontation, made applicable to the States

---

[6] It is worth noting, too, that the Amended Petition currently pending before this Court does not contain the ineffective-assistance claims Petitioner seeks to exhaust.  Thus, upon exhaustion in state court, Petitioner would have to seek leave to file a second amended petition asserting those claims. It is likely that such claims would not relate back to the claims pending in the Amended Petition and, thus, would be time-barred, making a stay pointless.  In light of this, it does not appear that the unexhausted claims are "potentially meritorious."  See, e.g., Duncan v. Walker, 533 U.S. 167 (2001); Mayle v. Felix, 545 U.S. 644 (2005); Sanchez v. Harrington, 2011 WL 2518942 (E.D. Cal. June 23, 2011).

17

through the Fourteenth Amendment right to due process, when Agent
Kerrigan attempted to testify regarding Petitioner's telephone
number based upon a report from the telephone company,[7] and by
the admission of the audiotapes without authentication by the
informant Faustino Fuentes.

The Appellate Division rejected this claim on direct appeal.

We turn first to defendant's contention that the
trial court erred by permitting the State to introduce
the tape recordings of Fuentes's conversations during
the drug purchases because Fuentes' statements were
inadmissible hearsay. Defendant argues that, because
Fuentes did not testify at trial, he was denied of his
constitutional right to confront Fuentes.

The Sixth Amendment to the United States
Constitution bars the admission in a criminal case of
"testimonial statements of a witness who did not appear
at trial unless he was unavailable to testify, and the
defendant had had a prior opportunity for
cross-examination." Crawford v. Washington, 541 U.S.
36, 53-54, 124 S.Ct. 1354, 1365, 158 L. Ed.2d 177, 194
(2004). A testimonial statement is "typically '[a]
solemn declaration or affirmation made for the purpose
of establishing or proving some fact.' " Id. at 51, 124
S.Ct. at 1364, 158 L. Ed.2d at 192 (quoting 2 N.
Webster, An American Dictionary of the English Language
(1828) (alteration in original)).

In United States v. Tolliver, 454 F.3d 660 (7th
Cir.2006), cert. denied, 549 U.S. 1149, 127 S.Ct. 1019,
166 L. Ed.2d 768 (2007), two defendants were charged
with conspiring to distribute and possess cocaine with
intent to distribute. Id. at 662. At the trial, the
government presented audiotapes of conversations
between one of the defendants and a confidential
informant, who made controlled purchases of cocaine
from the defendant. Ibid.

---

[7] Petitioner concedes that the trial court sustained his
counsel's objection to this testimony.

The Court of Appeals for the Seventh Circuit held that the Confrontation Clause as interpreted in <u>Crawford</u> did not bar the admission of the audiotapes even though the informant was not called as a witness at trial. <u>Id.</u> at 664-66. The Court noted that the defendant's recorded statements were admissible under the hearsay rules because they were admissions of a party-opponent. <u>Id.</u> at 665. The Court also noted that the informant's recorded statements had not been offered to establish the truth of the matter asserted. <u>Id.</u> at 666.

The Court therefore determined that the informant's statements were admissible to put the defendant's admissions into context and to make those admissible statements understandable for the jury. <u>Ibid.</u> The Court held that the informant's "statements were readily admissible as [a] form of non-hearsay, [and were] not subject to the strictures of Crawford and the Confrontation Clause[.]" <u>Ibid.</u>

The Court of Appeals for the Third Circuit reached essentially the same conclusion in <u>United States v. Hendricks</u>, 395 F.3d 173 (3d Cir.2005). In that case, the Court held that the Confrontation Clause as interpreted in <u>Crawford</u> did not bar the introduction of the recorded conversations between the co-defendants and a governmental informant even though the informant was not called as a witness at trial. <u>Id.</u> at 183-84. The Court did not determine whether the informant's statements were testimonial in nature but concluded that <u>Crawford</u> did not bar the admission of the informant's statements because they were not offered for their truth. <u>Id.</u> at 183.

Rather, the informant's statements were offered to provide the context for the statements of other parties, make them intelligible to the jury and allow the jury to recognize the statements of the other parties as admissions. <u>Id.</u> at 184 (citing <u>United States v. McDowell</u>, 918 F.2d 1004, 1007 (1st Cir.1990)). The Court held that, when a defendant or his co-conspirator engages in a "reciprocal and integrated conversation" with a governmental informant, who thereafter is unavailable to testify at trial, "the Confrontation Clause does not bar the introduction of the informant's portions of the conversations as are reasonably

19

required to place the defendant or coconspirator's nontestimonial statements into context." Ibid.

We find the reasoning of Tolliver and Hendricks to be persuasive. Here, as in Tolliver and Hendricks, Fuentes' statements were not offered for their truth. They were admitted for the purpose of placing other statements in context and making them understandable. We therefore conclude that the trial court did not err by allowing the introduction into evidence of the statements made by Fuentes in the recorded conversations of the subject drug transactions. [FN1]

> [FN1] We note that defendant asserts that no witness specifically identified the voice on the tapes as his. However, the State presented sufficient evidence from which the jury could reasonably find that defendant was the person with whom Fuentes spoke during the controlled drug transactions.

Defendant also contends that his Sixth Amendment right to confrontation was violated by evidence regarding his cell phone number. Defendant says that the State improperly asked DEA agent Kerrigan to testify that Fuentes had dialed defendant's cell phone number to arrange the January 14, 2004, drug transaction. Defendant says that the question sought inadmissible hearsay.

However, the record shows that defense counsel objected to the prosecutor's question on hearsay grounds and the court sustained the objection. The court noted that Fuentes could testify that the number he called was a number he knew to be defendant's phone number. As noted previously, Fuentes did not testify but the State then presented testimony from an employee of the phone company, who stated that the cell phone number called by Fuentes was a number registered to defendant. Because defendant had the opportunity to cross-examine that witness, he was not denied his constitutional right to confront the witness.

State v. Hernandez, 2010 WL 816828, *4-*5 (N.J.Super. App. Div. March 9, 2010).

The Appellate Division correctly identified and applied the controlling Supreme Court precedent: <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).  The decision of the Appellate Division is neither contrary to nor an unreasonable application of <u>Crawford</u>. To the contrary, the decision of the Appellate Division entirely parallels the analysis of the Court of Appeals for the Third Circuit, applying <u>Crawford</u> to an analogous situation, as set forth in <u>U.S. v. Hendricks</u>.  Accordingly, Petitioner is not entitled to relief on this claim.

C.   <u>Prosecutorial Misconduct</u>

Petitioner alleges that the misconduct of the prosecutor during summation, along with the State's pattern of relying upon hearsay evidence, and along with the State's presentation of its case as if its key witness would testify (when the State knew or should have known that he would not) deprived Petitioner of his constitutional right to a fair trial.

The Appellate Division rejected this claim on direct appeal.

> We next consider defendant's contention that a new trial is required due to prosecutorial misconduct.
>
> Defendant argues that the State improperly relied upon "inadmissible and highly prejudicial hearsay[,]" specifically the tape recordings of the drug transactions and certain evidence regarding his cell phone number. These contentions are without merit. As we have explained, Fuentes' recorded statements and the testimony regarding defendant's telephone number were not inadmissible hearsay. Therefore, the presentation of this evidence was not prosecutorial misconduct.

21

Defendant also argues that the prosecutor improperly commented upon facts not in evidence when he stated in his summation that Fuentes' mother resided at the address where defendant and Fuentes met on January 14, 2004. However, the record shows that defense counsel objected to the prosecutor's comment and the court sustained the objection. In addition, the court instructed the jury to disregard the prosecutor's statement, and stated that no direct evidence had been presented establishing that Fuentes' mother resided at the address and it would be up to the jury to determine whether to draw that inference from the testimony.

We note that "[p]rosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82, 727 A.2d 1 (1999). The State argues that the prosecutor's comment was a reasonable inference that could be drawn based on the evidence. The trial court seemed to agree when it suggested in its curative instruction that the jury could draw the inference. In any event, even if the prosecutor's statement was erroneous, the error was harmless because it related to a matter of little consequence to the outcome of the case. Moreover, the trial court appropriately addressed the matter by instructing the jury to disregard the prosecutor's comment.

Defendant additionally argues that the prosecutor improperly tried the case as though Fuentes would testify. As we stated previously, when questioned by the court, Fuentes said that he had informed the prosecutor on the previous day that he was not going to testify. The court asked the prosecutor whether he had "some inclination" that Fuentes would refuse to testify. The prosecutor stated that he did. The court then asked why the prosecutor had not informed the court and the prosecutor said that he did not "think to do that[.]"

Although it might have been preferable for the prosecutor to inform the court and defense counsel that Fuentes said he would not testify, we are not convinced that the prosecutor's failure to do so constitutes prosecutorial misconduct. The trial record indicates that the State expected Fuentes to testify at trial, despite statements he may have made indicating he would

22

> not. Furthermore, as we have explained, the tape
> recordings of Fuentes' conversations were properly
> admitted into evidence, despite his decision not to
> testify.

State v. Hernandez, 2010 WL 816828, *5-*6 (N.J.Super. App. Div.

March 9, 2010).

The U.S. Supreme Court has recognized the obligation of a

prosecutor to conduct a criminal prosecution with propriety and

fairness.

> He may prosecute with earnestness and vigor – indeed,
> he should do so.  But, while he may strike hard blows,
> he is not at liberty to strike foul ones.  It is as
> much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just one.
> ...  Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line

separating acceptable from improper advocacy is not easily drawn;

there is often a gray zone.  Prosecutors sometime breach their

duty to refrain from overzealous conduct by commenting on the

defendant's guilt and offering unsolicited personal views on the

evidence."  United States v. Young, 470 U.S. 1, 7 (1985).

> The prosecutor's vouching for the credibility of
> witnesses and expressing his personal opinion
> concerning the guilt of the accused pose two dangers:
> such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on
> the basis of the evidence presented to the jury; and
> the prosecutor's opinion carries with it the imprimatur
> of the Government and may induce the jury to trust the

23

Government's judgment rather than its own view of the evidence.

Id. at 18.

Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. Darden, 477 U.S. at 181-82. Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, the Appellate Division properly considered the challenged actions of the prosecutor in light of the trial as a whole, including the curative effect of the Court's instructions regarding the challenged remarks during summation, the effect of Mr. Fuentes's refusal to testify, and the admissibility of the various challenged hearsay testimony. The decision of the Appellate Division was neither contrary to nor an unreasonable

24

application of controlling Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason would not disagree with this Court's resolution of Petitioner's constitutional claims.  No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Motion for stay and the Petition will be denied.  An appropriate order follows.

Jose L. Linares
United States District Judge

Dated: 8/23/12

25